W. T. RAWLEIGH COMPANY, Appellant, v. GEORGE M. MOEL et al., Appellees.

No. 41134.

FEBRUARY 14, 1933.

Geiger & Geiger and C. O. Boling, for appellant.

J. C. France, for appellees.

MITCHELL, J.—On the 16th day of March, 1927, the appellee George M. Moel entered into a written contract with the appellant the W. T. Rawleigh Company, whereby he agreed to sell the company's products. By the terms of the contract the agreement was to expire on December 31, 1927. When the company delivered merchandise to George M. Moel it became his property.

To this contract was attached an agreement, which was as follows:

"In consideration of The W. T. Rawleigh Company, the above named Seller, extending credit to the above named Buyer, we, the undersigned, do hereby jointly and severally enter ourselves as sureties, and unconditionally promise, guarantee and agree to pay the said Seller for all products sold and delivered to the said Buyer under the terms of the above Contract, hereby expressly consenting and agreeing to all terms and conditions thereof. We hereby expressly waive notice of the acceptance of this Contract, and of the shipment of goods to the Buyer, and of extension of credit to the Buyer, and of the extension of time in which to pay for the goods

so purchased, and waive all notice of any nature whatsoever. We also agree that any statement made by the Buyer as to the amount of indebtedness due at any time shall be binding upon us. We also agree that it shall not be necessary for the Seller to first exhaust its remedies against the Buyer before proceeding to collect from us. This undertaking is to be an open one and shall continue without regard to the residence of the Buyer, or the location or manner of conducting his business, until the account is fully paid. It is mutually agreed that this Contract is conclusive and binding upon the party or parties who sign it, whether it is signed by any other party or parties or not, and that any statement or representations made to any of the undersigned sureties by any persons either as to who or how many parties will sign this surety agreement or as to any other matters not fully expressed herein shall not affect the rights of the Seller. It is further understood that there are no conditions or limitations to this undertaking except those written or printed herein at the time of signing hereof, and that after execution no alteration, change or modification shall be made except as provided for in the terms of the foregoing contract between the Buyer and Seller, and that any notice in any way affecting the rights of the Seller must be delivered by registered mail to the Seller at its principal office at Freeport, Illinois."

This agreement, or guarantee, was alleged to have been signed by B. A. Huber, Emanuel Rushek, and Charles Moel.

On January 3, 1928, a new contract was entered into with George M. Moel, in the same form as the prior contract, and another alleged agreement of guarantee in the same form was attached to the new contract, and was alleged to have been signed by B. A. Huber, Emanuel Rushek, and Charles Moel.

Under these contracts there was sold to George M. Moel a total of $1,774.35, from April 29, 1927, to June 29, 1928, and during said time the said George M. Moel paid on said account the total sum of $1,121.45. The appellees B. A. Huber and Emanuel Rushek answering denied any indebtedness, and especially denied that they ever signed either of said alleged contracts of guarantee. Charles Moel having died prior to the time of trial, the appellee M. A. Randall, executor of the estate of Charles Moel, deceased, was substituted as one of the defendants, and filed a written answer denying the signing and delivering of said contracts on the part of the decedent

Charles Moel. Judgment was entered against George M. Moel for the balance due on the account. On the same day the trial commenced, but before the trial commenced, the appellant dismissed its action as to Emanuel Rushek, without prejudice.

The record clearly shows that there was a dispute in the evidence in regard to whether or not B. A. Huber, or the decedent Charles Moel, or either of them, signed the contracts sued upon. It was clearly a jury question, and the jury having determined the question in favor of the appellees upon the conflicting evidence in this respect, the verdict of the jury is binding upon the appellant.

■ The appellant raises a great many objections to certain testimony offered. The appellees offered as one of their witnesses Emanuel Rushek. He had been originally one of the defendants. Just before the trial commenced, the appellant dismissed its cause of action without prejudice as to Rushek. His name was one of the names that appeared on the alleged guarantee, both on the 1927 and the 1928 guarantees. Appellant offered in evidence both of these guarantees, as Exhibit 1 and Exhibit 2. The offer was not limited, and the entire exhibit was admitted over objection by the appellees. On these exhibits the name of Emanuel Rushek appeared. The appellees then offered him as a witness, and he denied that he had signed Exhibit 1 or Exhibit 2. The exhibits having been offered, which bore the name of Emanuel Rushek, he was a competent witness to testify as to whether he had signed said alleged contracts of guarantee or not, and the court did not err in admitting the testimony of the said Emanuel Rushek.

■ The appellant also asserted that because judgment had been rendered against George M. Moel, he was therefore out of the case, and that his testimony as to his personal transaction with Charles Moel, the decedent, was thereby rendered competent. The appellant in this case is asserting a right of action against the appellees which depends for its very existence and validity upon personal transactions by George M. Moel with Charles Moel, the decedent.

Code Section 11257 provides that:

"No * * * person from, through, or under whom any such party or interested person derives any interest or title by assignment or otherwise * * * shall be examined as a witness in regard to any personal transaction or communication between such witness and a person at the commencement of such examination deceased * * *"

This court, in the case of McClanahan v. McClanahan, 129 Iowa 411, said:

"It is manifest that whatever rights the claimant had arose out of the trust relation and the alleged payment by the witness to the deceased. The witness was, then, a person through whom the claimant derived an interest. It is not necessary that the interest should be derived by transfer or assignment. It may be 'otherwise,' and, as used, that word is one of broad significance. It means that, if the right asserted by a claimant depends for its existence and validity upon a transaction between the deceased and a third person, the evidence of such third person shall not be allowed to prove the transaction."

Clearly, under the quoted part of said Section 11257, and under the case cited, George M. Moel, who procured the alleged contracts and the alleged signatures of Charles Moel, who died prior to the trial, was an incompetent witness, and the court rightly sustained objection to his testimony.

The appellant also complains of certain instructions given by the court in regard to the manner in which the payments which were made by George M. Moel should be applied upon the account. As the jury found by its verdict that the appellees were not liable for any amount under either contract, it is not necessary for us to discuss the alleged errors in the instructions given by the court in regard to the application of payments on the account, for they would not in any event have been prejudicial.

A careful reading of the record shows that there was no error in the trial of this case in the lower court; that the case was a jury question; that it was properly submitted to the jury, and the jury returned a verdict for the appellees; and that the verdict was sustained by the record.

We conclude that there was no error, and the judgment of the lower court is hereby—Affirmed.

All Justices concur.