ARTHUR STOOKESBERRY, Executor, Substituted Plaintiff, Appellee, v. JOHN BURGHER, Appellant.

No. 42786.

OCTOBER 15, 1935.

REHEARING DENIED JANUARY 24, 1936.

Heinrich C. Taylor and T. A. Goodson, for appellant.

Jo R. Jaques, and Buell McCash, for appellee.

ANDERSON, J.—This is an action seeking recovery upon a promissory note for $4,000. This is the second appeal. The opinion on the former appeal will be found in Mitchell v. Burgher, 216 Iowa 869, 249 N. W. 357.

The action was originally brought in May, 1929, naming

L. A. Burgher and John Burgher as defendants. Both of the defendants were nonresidents of the state of Iowa, and jurisdiction against one of them, John Burgher, was obtained through the process of attachment. Upon the first trial of the case in the district court the defendant John Burgher appeared and defended alleging, first, that the note in suit was paid, and, second, that by reason of certain facts pleaded the plaintiff was estopped from maintaining the suit upon the note. At that time the plaintiff, George T. Mitchell, was alive, but has since deceased, and the executor of his estate has been substituted as plaintiff. The case was first tried in the lower court and submitted to a jury resulting in a verdict for the defendant. On appeal to this court the case was reversed on account of numerous errors, *inter alia,* was failure to sustain a motion of the plaintiff for a directed verdict at the close of defendant's evidence. The case was remanded and upon a retrial in February, 1934, the trial court directed a verdict for the plaintiff for the amount due upon the promissory note in suit. · Judgment was entered upon verdict so directed, and the defendant, John Burgher, prosecutes this appeal.

The note in suit, payable to George T. Mitchell and executed by L. A. Burgher and John Burgher, was dated March 17th, 1920, and due, by its terms, on demand, and "if no demand is made, on March 17th, 1921." Some two weeks prior to the execution of the note in suit, the defendant, L. A. Burgher, and his father, A. Burgher, executed and delivered to George T. Mitchell another note for $5,000 dated March 3rd, 1920, and due, by its terms, on demand, and "if no demand is made, on March 3rd, 1921." Both of these notes were given for loans made by George T. Mitchell to L. A. Burgher.

On February 28th, 1921, a day or two before the $5,000 note matured, Mitchell, the payee, asked L. A. Burgher for some money upon his indebtedness and received a check from L. A. Burgher upon the Peoples State Bank of Coatsville, Missouri, for the sum of $4,500. At the time of the giving of this check nothing was said as to the application of the proceeds thereof, although the $5,000 note was due or would become due in a few days. The check was deposited by Mr. Mitchell in the National Bank of Bloomfield, Iowa, and when it was presented to the Peoples State Bank, upon which it was drawn, was refused, and it was protested for want of sufficient funds. It may here be

mentioned that L. A. Burgher was the president of the Peoples State Bank of Coatesville and John Burgher was the cashier, and that John Burgher is the uncle of L. A. Burgher. On the 7th day of March, the day the check was protested, L. A. Burgher went to the bank and told his uncle that the check which was protested was given to pay the $4,000 note upon which John Burgher was liable, but notwithstanding this statement, John Burgher refused to cash the check. L. A. Burgher then negotiated a loan from a third party (Crapson) for $3,600 upon a note signed by himself and his father, A. Burgher. This note was later secured by a mortgage upon real estate owned by the father, which real estate was later taken over by the party (Crapson) loaning the money in payment of the note. L. A. Burgher testifies that after the check was dishonored and he had to raise the money from other sources, he then changed his mind upon which obligation he expected to apply the proceeds of the $4,500 check, and he thought the application should be made upon the $5,000 note upon which his father was surety; and the payment later was so applied. After he secured the loan of approximately $3,600, as above indicated, he took the drafts so obtained and went to the bank of Coatsville to take up his protested check. He obtained from that bank through his uncle, John Burgher, drafts for $4,506.34, $4,500 of which was the amount of the check and $6.34 the protest fee. In order to do this he used the $3,600 he had borrowed from the third party, together with $727 of his own money taken from his checking account in the Coatsville Bank and $185 that he borrowed from his uncle, John Burgher, for which he gave his note. This occurred on March 8, 1921, the day following the protest of the check. It will be noticed here that without borrowing the $185 from his uncle, John Burgher, L. A. Burgher had $4,323.34 of his own money, which was more than enough to pay the $4,000 note with accrued interest. John Burgher, the defendant, testifies that the $185 he loaned to L. A. Burgher on March 8, 1921, was not loaned for the purpose of taking up the $4,000 note, but was loaned for the purpose of taking up the check. L. A. Burgher then went to the National Bank of Bloomfield and took up the protested check, which had been returned to it from the Coatsville Bank, paying to the National Bank the amount of the check with the protest fee of $6.34 added. L. A. Burgher testified that he never had any talk with his uncle, John Burgher, after he

borrowed the money from Crapson, the third party, as to where he intended to apply the proceeds of the $4,500 check, and that when he borrowed the $185 from his uncle to make up the amount sufficient to take care of the protested check, nothing was said to his uncle or by his uncle about applying the payment, or a part of it, upon the $4,000 note. It is apparent that when L. A. Burgher told his uncle, John Burgher, on March 7, 1921, the day the check was protested, that the check was given to pay the $4,000 note, that it was for the purpose of inducing his uncle to honor the check, but failing in this L. A. Burgher later procured the necessary funds from other sources. Up to this time nothing was said to George T. Mitchell, the payee of the note, as to where the payment of $4,500 should be credited and there is no testimony indicating any promise or statement made by L. A. Burgher to John Burgher that in return for the loan of $185 the proceeds of the $4,500 check would be applied on the $4,000 note. It may be noted here that the $4,000 note was not yet due, and that the $5,000 note was due. It may also be noted here that in directing a verdict for the plaintiff upon the $4,000 note against John Burgher the trial court, with the consent of the plaintiff, credited thereon the sum of $185 with interest, representing the advancement made by John Burgher to make up funds sufficient to take up the $4,500 check. There is some evidence in the record that at a later time L. A. Burgher told George T. Mitchell that his uncle, John Burgher, would contend that the $4,500 check should apply upon the $4,000 note, but such conversation was long after the payment was made to Mitchell and the evidence is not of such a clear, convincing, and satisfactory character as would tend to create the estoppel for which the defendant contends. There is no evidence that John Burgher relied upon any promise that the proceeds of the check were to be applied upon the $4,000 note or that George T. Mitchell knew of any such promise. And it affirmatively appears that on the day the $185 was loaned by John Burgher to assist in taking up the check no mention whatever was made as to the application of the proceeds.

By a comparison of the above recited facts with the facts considered by this court upon the first appeal, as indicated in the opinion of Mr. Justice Claussen, it will be noticed that there is very little, if any, variance in the record made on the first trial and on the second trial. In the first trial the defense was payment of the $4,000 note, and that plaintiff was also estopped

from permitting any other application of the payment, and from maintaining an action upon the $4,000 note. In the former opinion we held (216 Iowa 869, page 877, 249 N. W. 357, 361) that L. A. Burgher was not the plaintiff's agent and that plaintiff was not charged with any knowledge had by L. A. Burgher at the time the payment was made or applied, and that this was especially true on account of the personal interest of L. A. Burgher in the entire transaction. This court further stated, in said opinion on the same page that, "upon consideration of the record, we reach the conclusion that the $4,500 payment was validly applied upon the $5,000 note. This leaves the defense of payment, in every aspect pleaded by defendant, without any support in the record." We further said in that opinion on the same page in referring to the contention that plaintiff is estopped from maintaining the action, "What has been said in the preceding paragraphs precludes the thought that any element of estoppel against plaintiff is supplied by the application of the payment to the $5,000 note." We further said in the former opinion, loc. cit. 878:

"In none of these things, nor in any other respect, does the record indicate that plaintiff acted other than in good faith and well within his rights, and it is, of course, unnecessary to pursue the inquiry further. The defendant failed to sustain his defenses, and it follows that plaintiff's motion for a directed verdict should have been sustained."

■■■ We are still in accord with the correctness and soundness of the pronouncements in the former opinion above referred to. There is no evidence in this record to sustain a finding that any conversation between L. A. Burgher and John Burgher was ever brought to the knowledge of the plaintiff, and even it it was, we are of the opinion that nothing contained in such conversation would warrant or sustain a finding creating an estoppel as against the plaintiff.

■■■ Much of the argument of both appellant and appellee in this court is directed to the action of the trial court in holding a part of the testimony of L. A. Burgher was incompetent under section 11257 of the Code (the so-called "Dead Man's" Statute). Much might be said in determining this question, but we deem it unnecessary to go into an extended discussion as to the correctness of the court's ruling on this question. However, it may be

well to note that at the time L. A. Burgher was called as a witness by defendant on the second trial of the case he was named as a party defendant, but had not been served with an original notice and was not in fact a party to the action. After he had been examined and cross-examined, a recess of the court was taken during which time he was served with an original notice. He was again put upon the witness stand and defendant sought to further interrogate him as to his relations and conversations with George T. Mitchell, deceased. The objection was then made that he was an incompetent witness and that the testimony was incompetent under section 11257 of the Code. Counsel appearing for the defendant John Burgher then filed, as attorneys for L. A. Burgher, a confession of judgment and asked that judgment be entered forthwith against L. A. Burgher thereon. Judgment was entered. And a further attempt was made to elicit further testimony from L. A. Burgher as to his relations, conversations, and dealings with George T. Mitchell, deceased. The court sustained objections thereto under section 11257. We are satisfied that the court's ruling was correct and this holding is supported by Rawleigh Co. v. Moel, 215 Iowa 843, 246 N. W. 782; McClanahan v. McClanahan, 129 Iowa 411, 105 N. W. 833; Pipkin v. Tuer (Tex. Civ. App.), 177 S. W. 983; Hoffman v. Maloratsky, 112 N. J. Eq. 333, 164 A. 260; Frye v. Gullion, 143 Iowa 719, 121 N. W. 563, 21 Ann. Cas. 285; James v. Fairall, 168 Iowa 427, 148 N. W. 1029; Linnemann v. Kirchner, 189 Iowa 336, 178 N. W. 899. However, if the proffered testimony had been admitted, it would not have sustained the claim of estoppel.

In order to establish the defense of estoppel, it was necessary to show the representations made by L. A. Burgher to his uncle, John Burgher, in order to obtain the loan of $185, then show that the plaintiff, George T. Mitchell, was apprised of such representations. It was also necessary to show that the $185 was obtained from the defendant John Burgher with the understanding that it, with the other money, would be applied to the payment of the note which he, John Burgher, had signed.

In order to constitute equitable estoppel, or estoppel *in pais*, false representation or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; that representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to

his prejudice and injury. There can be no estoppel in any event, if any of these elements are lacking.. McIntosh v. McIntosh, 211 Iowa 750, 234 N. W. 234; Beechley v. Beechley, 134 Iowa 75, 108 N. W. 762, 9 L. R. A. (N. S.) 955, 120 Am. St. Rep. 412, 13 Ann. Cas. 101; Bundy v. Canning Co., 215 Iowa 674, 244 N. W. 841.

Estoppel is a plea not favored in law and to be sustained must be clearly proved, in all its essential elements, by clear, convincing, and satisfactory evidence. City Bank v. Alcorn, 188 Iowa 592, 176 N. W. 628; Cheshire v. McCoy et al., 205 Iowa 474, 218 N. W. 329.

As we have heretofore noted in this opinion, the defendant John Burgher was credited with $185 with accrued interest upon the amount due on the $4,000 note at the time the lower court directed verdict for the plaintiff; as this $185 was the only money that it is claimed he advanced by reason of any statements or representations, it follows that in any event he was not injured or damaged to any extent whatever.

To hold that by the advancement of the $185 by John Burgher, which amount was not necessary to make up the amount due on the $4,000 note, an estoppel was created against the plaintiff, George T. Mitchell, would result in releasing John Burgher from all liability upon the $4,000 note.

Without further extending this opinion, we are satisfied that the defendant failed to sustain his defense of an estoppel, and that the rulings and final order of the trial court were correct, and that an affirmance must follow.—Affirmed.

KINTZINGER, C. J., and MITCHELL, POWERS, HAMILTON, and PARSONS, JJ., concur.